UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM RZADKOWOLSKI,

              Plaintiff,

v.

TOWNSHIP OF METAMORA,

           Defendant.

_____/

Case No. 14-12480

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MONA K. MAJZOUB

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [17];
GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT [22];
GRANTING IN PART DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT
[41]; GRANTING IN PART PLAINTIFF'S CROSS MOTION FOR SUMMARY
JUDGMENT [43]; DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE
WITNESSES [33]**

On June 24, 2014 Defendants removed this case to federal court, alleging a
violation of First and Fourteenth Amendment Free Speech rights, prior restraint,
unlawful taking, violation of equal protection, and an unconstitutional tax
surrounding the denial of several variances for Plaintiff's non-conforming sign. On
July 13, 2015 Plaintiff filed a Motion for Summary Judgment as to Count II of
Plaintiff's complaint [17]. Defendant responded and filed a Cross-Motion for
Summary Judgment on August 10, 2015 [22]. Plaintiff replied to Defendant's
response on August 24, 2015 [27]. Plaintiff filed a response to Defendant's cross-
motion for summary judgment on August 31, 2015 [29]. Defendant replied on

1

August 28, 2015 and with a supplemental brief on September 14, 2015 [28; 30].

On November 24, 2015 Defendant filed a Second Motion for Summary Judgment

[41]. Plaintiff responded on December 15, 2015 and simultaneously requested

summary judgment on the prior restraint and takings claims [43]. Defendant

replied on December 23, 2015 [44] and responded to the cross-motion for

summary judgment on January 5, 2016 [46]. Plaintiff replied on January 19, 2016

[47]. A hearing on the pending Motions and cross-motions was held on April 19,

2016.

For the reasons stated below, Plaintiff's Motion for Summary Judgment [17]

is **DENIED**, Defendant's Cross-Motion for Summary Judgment [22] is

**GRANTED**, Defendant's Second Motion for Summary Judgment [41] is

**GRANTED in part and DENIED in part**, Plaintiff's Cross-Motion for Summary

Judgment [43] is **GRANTED in part and DENIED in part**, and Plaintiff's

Motion to Strike Witnesses [33] is **DENIED as moot**.

## FACTUAL BACKGROUND

**1. LOCAL ZONING ORDINANCE AT ISSUE**

On April 13, 1987, the Township of Metamora adopted Ordinance 23

("Zoning Ordinance") [22-D]. The Purpose for the Zoning Ordinance signage

regulations are found in Article 1, Section 1. This purpose reads as follows:

The purpose of this ordinance is to promote the public health, safety, morals and general welfare; to encourage proper use of land and natural resources in order to ensure their protection and preservation and limit their improper use; to limit the inappropriate overcrowding of land and congestion of population, transportation, systems and other public facilities; to provide adequate light, air and open spaces; to reduce hazards to life and property; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; to meet the needs of all citizens for food, fiber, energy, places of residence, recreation, employment, trade, service, and other uses of land; to ensure that uses of the land shall be situated in appropriate locations and relationships; and to conserve the expenditure of funds for public improvements and services.

[22-d].

Billboards are regulated under subsection E(6) of Article 15, Section 22. Billboards are permitted in general business (B-2) and light manufacturing districts (M-1). *Id.* Further restricting legal billboards in these areas, the ordinance states that to be conforming, billboards in B-2 and M-1 districts must be on property occupied by an existing business, shall not exceed 100 square feet, and shall be no closer than 1000 feet to another sign or to a residential district. *Id.* Legal, conforming billboards cannot interfere with driver visibility and/or cause glare on adjoining properties. *Id.* Throughout the section relating to signage regulations, the following considerations are mentioned: driver visibility and the impact on adjacent property; public convenience, safety and health; and consistency with the

3

character of the surrounding neighborhood. [22-D at 1522 - Section A (11);

Section A (12); Section H].

These sign regulations have existed in this form since they were adopted on

February 21, 2002. In an affidavit, Ann Derderian, a member of the Township's

Planning Commission who was involved in the amendment process, states that the

following interests were behind the sign regulations as they currently exist: (1)

preserving aesthetics and character of the community; (2) minimizing clutter and

visual blight to maintain a vibrant business district; (3) maintaining satisfactory

open space; (4) minimizing traffic obstructions and visual hazards; (5) enhancing

property values and promoting community satisfaction; (6) maintaining the

character of the community and meeting the expectations of its residents as a

largely residential and agricultural Township [22-F].[1]

The process for site plan review and approval is set forth in Article 15,

Section 24, subsection E, which provides the following factors to consider when

evaluating a proposed site plan: impact on parking and traffic; impact on adjoining

properties; impact on natural features and characteristics of the land; contribution

of noise, odor and excess light.

---

[1] In *Pagan v. Fruchey*, 492 F.3d 766, 773 (6th Cir. 2007), an affidavit was
sufficient to meet the second prong of the *Central Hudson* test of identifying a
government's substantial interest and will thus be considered alongside the purpose
of the Zoning Ordinance in the *Central Hudson* analysis below.

4

## 2. PLAINTIFF'S REQUEST FOR VARIANCE

Plaintiff's current billboard was erected before the Sign Ordinance took effect. It is 378 square feet in area, thirty feet in height, is located within 1000 feet of another billboard in a B-1 Local Business District where billboards are prohibited [1 at 11 ¶13].  Because the sign was erected before the Ordinance was passed, it is thus a legal non-conforming use that was grandfathered in under M.C.L. § 125.3208(1). *Id.* Utility poles and electric lines partially obstruct the view of the North and South faces of Plaintiff's billboard [17-D].

To eliminate these obstructions, Plaintiff proposed a plan to move the billboard across the street to property he owns, located at 3777 S. Lapeer Road. This property is located in a B-2 General Business District and is approximately 500 feet north of the billboard's current location. Prior to purchasing the property, Plaintiff contacted the township and was informed that if he wanted to place his billboard there, he would present a non-conforming use that would require several variances, including variances from the Sign Ordinance's size, height, spacing and existing business requirements. Despite this information, Plaintiff purchased the property and subsequently petitioned the Township of Metamora Zoning Board of Appeals (ZBA) for these variances.

On April 17, 2014, the ZBA held a public hearing on the application. There were two objections from neighboring property owners to the proposed variances. The ZBA denied the variances, stating that the request was denied because the Plaintiff knew that multiple variances would be required before buying the property, there were objections to the proposed billboard move from neighboring property owners, and the need for multiple variances itself.

### 3. Previous Variances Allowed for Billboards by ZBA

Previously, two billboards were granted variances by the ZBA. In 2006, Lapeer County Bank & Trust and Wolverine Sign Works applied to the ZBA for variances. Both of these businesses had billboards located on property that was being acquired by the Michigan Department of Transportation for an expansion of the M-24 and right of way [41-A]. There were no objections to either request and, in fact, each had a letter of support for the move. The billboards would be moved farther back on the same parcel of property on which they were previously situated, the signs were to be placed at the same distance from the new right of way as they previously were placed from the old right of way, and both applicants noted that they would be unable to continue advertising if they could not move their signs since the land was being taken for the new road expansion.

In response to these applications, the ZBA approved the variance request of Lapeer County Bank and Trust on January 5, 2006 and Wolverine Sign Works on March 16, 2006. The ZBA cited the following reasons for approving the variances: there was no action on the part of the applicants causing the signs to be moved, the same activity would be continued on the same parcel of land, the sign would be located the same distance from the right of way as it had previously been, and there were letters of support for the move.

**ANALYSIS**

### 1. VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT FREE SPEECH RIGHTS

Plaintiff filed a Motion for Summary Judgment on the First Amendment claim (Count two of the complaint) on July 13, 2015 [17]. Defendant filed a response and cross-motion for Summary Judgment as to Count two on August 10, 2015 [22]. When considering whether a Plaintiff's First Amendment Rights have been violated through municipal ordinances concerning billboard restrictions, Courts have applied either the *Central Hudson* commercial speech analysis or the time, place and manner analysis used for content-neutral regulation of speech. *See e.g. Metromedia Inc. v, City of San Diego*, 453 U.S. 490 (1981); *Prime Media Inc. v. City of Brentwood*, 398 F. 3d 814 (6th Cir. 2005). These two tests have been

7

described as "substantially similar" by the Supreme Court. *Bd. of Trs. v. Fox,* 492 U.S. 469, 477 (U.S.1989). Based upon the submissions of the parties, the *Central Hudson* commercial speech analysis will be applied to evaluate Plaintiff's claim.

The *Central Hudson* decision imposes a four-part test: (1) "commercial speech must concern lawful activities and not be misleading" (this is not at issue in this case); (2) "government must establish a substantial interest in support of the regulation"; (3) "the proposed restriction or regulation directly and materially advance the substantial governmental interest set forth in the second prong of the test"; (4) "the regulation must be narrowly tailored to achieve the government's desired result." 447 U.S. 557, 563-564 (1980).

The Plaintiffs seek summary judgment based on the fact that the Government fails on the second prong of the test since it has not asserted a governmental interest or identified any "harms" that it intends to address through its billboard regulations. Plaintiff relies on *Int'l Outdoor, Inc. v. City of Romulus* to support its argument that the purpose of the Zoning Ordinance cannot be imputed to the sign regulations, and that therefore the government has failed to identify a substantial interest for their billboard regulations. No. 07-15125, 2008 WL 4792645 (E.D. Mich. Oct. 29, 2008).

8

However, this misperceives the holding in *International Outdoor*. In *CBS Outdoor, Inc. v. City of Royal Oak*, the Court found that the Zoning Ordinance's stated purpose could be imputed to the sign ordinance because the sign ordinance at issue was a part of the zoning ordinance itself. No. 11-13887, 2012 WL 3759306, at \*7 (E.D. Mich. Aug. 29, 2012). This is in stark contrast to the billboard ordinance at issue in *International Outdoor,* which was contained within a signage ordinance that was separate and distinct from the zoning ordinance. *Id*. In this case, like the ordinance at issue in *CBS Outdoor, Inc.*, the billboard regulations are in fact contained *within* the Zoning Ordinances; therefore, the billboard ordinance is a *part* of the zoning ordinance, and it is correct to apply that ordinance's purpose to the billboard provisions. *Id.*

It is well established that the litany of interests the government has stated here, including public health and safety, traffic safety, aesthetic concerns and maintenance of environment are all substantial, legitimate government interests that are served by the regulation of billboards. *See e.g. H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 623 (6th Cir. 2009); *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 823 (6th Cir. 2005). Therefore, the government has a legitimate purpose in regulating billboards.

As to the third prong of the analysis, to meet this requirement, there must be "some evidence to establish that a speech regulation addresses actual harms with some basis in fact." *Bench Billboard Co. v. City of Toledo*, 499 F. App'x 538, 544 (6th Cir. 2012). Courts have repeatedly found that the regulation of billboards' size and location for traffic safety and aesthetic reasons are legitimate methods to advance these important governmental interests. *See e.g. Id* at 544; *Metromedia Inc.* 453 U.S. (1981). In fact, these restrictions have been promulgated by cities and upheld by Courts so often that the Supreme Court in *Metromedia Inc.* held that Courts can rely on "'the accumulated, common-sense judgments' of local lawmakers and reviewing courts [which] have established that 'billboards are real and substantial hazards to traffic safety'" and that regulations that limit size and location of signs address these concerns, therefore Defendants have met this prong. *Bench Billboard Co.supra*, citing *Metromedia Inc.*, *supra* at 509.

Finally, to be narrowly tailored, a regulation "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals" and must leave open ample area for alternative forms of communication. *CBS Outdoor, Inc.*, 2012 WL 3759306 (2012), citing *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989). Similar restrictions to height, size, and location of billboards for the purposes of traffic safety and aesthetic concerns

10

in the community have been upheld repeatedly as being narrowly tailored. When there is not a complete ban on all signs, and only those that exceed a certain size, and those placed in certain inappropriate locations, are banned, zoning regulations are appropriate because smaller signs, properly placed, are less likely to interfere with aesthetics and traffic safety. *See e.g. Prime Media, supra; CBS Outdoor, Inc. supra; Rzadkowolski v. Village of Lake Orion*, 845 F. 2d 653 (1988).

In the case at bar, there is no evidence that the regulations are broader than necessary to achieve the goals of the Township, and there is not an argument that there are no alternative means of communication, especially since Plaintiff is currently communicating his message, just not in his preferred way.

Plaintiff cannot sustain a First Amendment claim and summary judgment is granted in favor of the Defendant on this claim.

### 2. PRIOR RESTRAINT

Defendant addressed this claim in their Second Motion for Summary Judgment, filed on November 25, 2015 [41]. Plaintiff responded to this Motion on December 15, 2015 and in its brief presented a cross-motion for summary judgment on the prior restraint issue [43].

"[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the

licensing authority, is unconstitutional." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). If this restriction is a content-neutral time, place and manner restriction, then the regulation must "contain adequate standards to guide an official's decision and render that decision subject to effective judicial review." *Thomas v. Chicago Park Dist.*, 122 S. Ct. 775, 777 (2002). It is undisputed that the regulation here is content neutral, so the *Thomas* standard applies. To avoid qualifying as a prior restraint on free speech, regulations must be "narrowly drawn" to guide an official's decision and be subject to appeal. *Id* at 324. However, standards can be flexible, and officials are allowed some subjective discretion in their regulatory decisions because "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 U.S. at 794.

There is no real argument that the granting of permits for billboards is a prior restraint since the size, location, height and area requirements are discrete, specific and objective. *See H.D.V.-Greektown*, 568 F.3d at 621. Plaintiff asserts in his response that the discretionary power under the Sign Ordinance and Section 1801(C) provides the ZBA "unduly broad discretion to grant or deny variances, and thus constitute unconstitutional prior restraints on speech" [43]. Plaintiff argues that Defendant's complaint does not contemplate a challenge to the

12

standards governing the granting of variances, but rather concerns the permit requirements in the ordinance concerning height, size and location. However, the claim for prior restraint states that "Metamora's denial of the variances to [Plaintiff] violated [Plaintiff's] right to free speech protected by the United States Constitution" so the claim does in fact contemplate the standards for issuing variances.

Section 1801(c) of the Township Zoning Ordinance provides that a variance can be granted if it "will not be contrary to the public interest where, owing to special conditions, a practical difficulty exists in the strict and literal enforcement of the provisions of this Ordinance." Additionally, a variance from the terms of the ordinance will not be granted unless a written application is submitted demonstrating the following:

> (1) That special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other land, structures, or buildings in the same district;
>
> (2) That strict and literal interpretation of the provisions of this Ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this Ordinance;
>
> (3) That the special conditions and circumstances do not result from the actions of the applicant, particularly any failure of the applicant to investigate the requirements of this Ordinance

13

before purchasing the property upon which a variance is requested; and

(4) That granting the variance requested will not confer on the applicant any special privilege that is denied by this Ordinance to owners of other lands, structures, or buildings in the same district.

Nonconforming use of neighboring lands, structures, or buildings in the same district, and permitted use of lands, structures, or buildings in other districts shall not be considered grounds for issuance of a variance.'

[43-3 at 2-3].

These conditions are completely subjective, and are not "narrow, objective and definite standards." *CBS Outdoor, Inc.,.* 2012 WL 3759306, at *5. By the terms of the Ordinance, guidance given to the decision-makers is that variances should be granted when they "will not be contrary to the public interest."  This is vague and provides absolutely no guidance. The only instruction provided is to applicants, and addresses what information should be included, but even this admittedly vague, subjective information does not provide guidance to those making the decisions. Rather, it is directed to applicants. Even if the decision-makers were required to consider these conditions, they are no less discretionary and subjective, and very similar to those that Courts in the Eastern District have found to be unconstitutional prior restraints. *See e.g. Supra; Macdonald Advert. Co. v. City of Pontiac*, 916 F. Supp. 644, 650 (E.D. Mich. 1995); *Int'l Outdoor,*

14

*Inc. v. City of Romulus*, No. 07-15125, 2008 WL 4792645, at *9 (E.D. Mich. Oct. 29, 2008); *CBS Outdoor, Inc. v. City of Royal Oak*, No. 11-13887, 2012 WL 3759306, at *6 (E.D. Mich. Aug. 29, 2012).

Defendant argues that its criteria for granting variances contain "several specific and objective standards intended to guide official decision-making" and yet they do not identify what these are. Simultaneously it is admitted that the considerations of public interest, special conditions and practical difficulty are subjective, broad discretionary factors that actually support a finding of prior restraint. . The Township's discretion in the granting of variances is unbridled and lacks objective criteria, thus, Section 1801(c) is an unconstitutional prior restraint and therefore summary judgment on this claim is granted to the Plaintiff.

The Ordinance contains a provision that "each and every part of this Ordinance is hereby declared to be severable" and "should any Article, subsection or provision be declared by the Courts to be unconstitutional or invalid, such decision shall not affect the validity of the Ordinance as a whole" other than the part declared unconstitutional." [22- Exhibit D, Article 23]. The Court found above that the sections of the Ordinance dealing with the placement and construction of billboards are constitutional. The Court looks to state law to determine if these

15

sections are severable. *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 772 (1988).

The Michigan Supreme Court has held that the general rule of statutory construction "favors severability." *Blank v. Dep't of Corr.* 462 Mich. 103, 122–23 (2000). Therefore, if a constitutional section of a statute is independent of an unconstitutional provision, and is "otherwise complete in itself and capable of being carried out without reference to the unconstitutional" section, the non-offending portion may stand. *King Enterprises, Inc. v. Thomas Twp.*, 215 F. Supp. 2d 891, 915 (E.D. Mich. 2002) (citations omitted).

This case is factually similar to the *King Enterprises* case, where the sections of the ordinance dealing with the various constraints on billboards, including "placement and construction of billboards, non-content-based structural requirements, and lighting" were held to not violate the First Amendment, while the requiring of permits by the board constituted an unconstitutional prior restraint for having a process that does not objectively guide the decision makers. In this case, the constitutional sections of the ordinance are, "in effect, extensions of the local building code that prescribe the physical requirements for all signs regardless of content" and are thus "independent provisions capable of enforcement apart from the remainder of the ordinance." *Id.* Therefore, the Court concludes that

Article 15, Section 22 of the ordinance dealing with the placement of signs is severable and does not violate the First Amendment. This section of the Ordinance may stand despite the Court finding that the granting of variances section is an unconstitutional prior restraint.

### 3. UNLAWFUL TAKING

Defendant addressed this claim in their Second Motion for Summary Judgment, filed on November 25, 2015 [41]. Plaintiff responded to this Motion on December 15, 2015 and in its brief presented a cross-motion for summary judgment on the unlawful taking issue [43].

Plaintiff claims that by denying his variance, Defendant deprived his property of all the economic value, constituting a regulatory taking, and asserts that he is thus entitled to summary judgment on his taking claim. To be considered a regulatory taking, a regulation must deny a property owner "all economically beneficial or productive use of the land." *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1015 (U.S.S.C. 1992).  Plaintiff cannot sustain a regulatory taking claim because it is undisputed that his property still retains economic value, per a letter from the township tax assessor who stated on August 25, 2015 that the property has a true cash value of $8,000, which is only $200 less than what

17

Plaintiff paid for it. [43-8]. "Courts have allowed substantial diminution in value without finding a taking." *Tandy Corp. v. City of Livonia*, 81 F. Supp. 2d 800, 810 (E.D. Mich. 1999). Additionally, Plaintiff admitted in interrogatories that he had discussion with adjacent landowners when he purchased the land who were interested in buying the property from him if he ever decided to sell [46-2]. The fact that there is true cash value in a possible sale shows that there is economic value remaining, as Courts have denied finding a regulatory taking when the land had value in sale. *See e.g. Tandy Corp; Prewitt v. City of Rochester Hills*, 105 F. Supp. 2d 724, 730 (E.D. Mich. 2000) vacated in part, 54 F. App'x 817 (6th Cir. 2002) (vacated in part on unrelated grounds by *Prewitt v. City of Rochester Hills*, 6th Cir.(Mich.), December 20, 2002). Therefore, the takings claim will be analyzed under the balancing test of *Penn. Central Transportation*.

   The factors to be considered in the *Penn. Central* inquiry are the following:

> (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.

*Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493-94 (6th Cir. 2001). As shown above, there has not been a severe economic impact of the regulation on the claimant. Additionally, Plaintiff cannot show that the denial of the variance

18

interfered with any reasonable investment backed expectations, which must be "more than a unilateral expectation or an abstract need." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984).

The claimant bought the property knowing that he would have to apply for a variance to use it for the purpose that he bought it for. The fact that two variances had been granted six years prior to two non-similar applicants cannot constitute reasonable investment backed expectations. Because the previous variances were granted to parties dissimilar to him, and Plaintiff was warned and aware that he would be not be allowed to place a sign on the property under the regulations and would have to apply for variances, it is not reasonable to expect a variance to be granted.

There is also an absence of evidence that Plaintiff purchased the property in reliance upon any assurance by the ZBA that a variance would be granted. Plaintiff merely asserts that he relied on the granting of variances six years previously- this is not a reasonable investment-backed expectation. Finally, while Plaintiff is right that the fact that he was aware of the regulations regarding billboards before he bought the property does not foreclose his takings claim, it is a factor to be considered when deciding whether he has shown a reasonable investment backed expectation or not and makes it difficult to successfully pursue a takings claim. *See*

*Palazzolo v. Rhode Island*, 533 U.S. 606, 630 (2001), *see also Norman v. United States*, 429 F.3d 1081, 1092-93 (Fed. Cir. 2005). Also, as discussed above in First Amendment analysis, the government regulation at issue has a legitimate public purpose.

Plaintiff has failed to establish that there has been a taking, and summary judgment is granted on this claim in favor of the Defendant.

### 4. EQUAL PROTECTION

Plaintiff contends that the prior granting of variances to Wolverine Sign Works and Lapeer County Bank & Trust, and its denial of a variance in the case at bar, constitutes a violation of Equal Protection under Michigan law. Michigan Courts have held that "Michigan's equal protection provision is coextensive with the Equal Protection Clause of the United States Constitution." *Shepherd Montessori Ctr. Milan v. Ann Arbor Charter Twp.*, 486 Mich. 311, 318 (2010).

"The Equal Protection Clause prohibits discrimination by government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Bench Billboard Co.*, 675 F.3d at 986. Plaintiff asserts that it is asserting an equal protection claim based on the violation of fundamental First Amendment right to free speech, and hence its claim is entitled to heightened

20

scrutiny. *Id.* However, the Sixth Circuit has not extended the fundamental rights analysis to classes of one. To prevail on an equal protection claim as a class of one, Plaintiff must show that "it and other individuals who were treated differently were similarly situated in all material respects." *Id.* Additionally, Plaintiff must show that the governmental entity "treated them differently without rational basis." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). Plaintiff has failed to show either of these requirements, and the equal protection claim must fail.

First, Plaintiff cannot show that it is similarly situated to the two previous parties that were granted variances. To be similarly situated, the parties at issue must demonstrate they "were similarly situated in all material respects." *Bench Billboard Co.*, 675 F.3d at 986. In this case, there is little factual similarity between Lapeer and Wolverine on the one hand and Plaintiff on the other.

Lapeer and Wolverine did not create the need for a variance, which was expressly one of the considerations and reasons for denying Plaintiff's request. Wolverine and Lapeer's variance request were the result of the "taking" of the property on which their billboards were located in order to widen a road. On the other hand, Plaintiff in effect created his own need for a variance- he purchased new property on which to move his billboard so that he could earn greater profits

21

by having the sign completely unobstructed from view, as well as no longer having to rent an area. There was no necessity to relocate to another location which did not permit billboards, unlike the necessity for Lapeer and Wolverine to move because of the road expansion. Denial of the variance has not taken his ability to communicate away. If Lapeer and Wolverine had been denied a variance, they would not have been able to continue communicating their speech since they had to move their sign to accommodate the new roadway, while Plaintiff was not being prevented from keeping his grandfathered sign where it was currently located and merely sought to move it to improve its visibility and move it to a location where he owned the land rather than rented.

Moreover, Plaintiff requested to move the billboard onto new property, whereas Lapeer and Wolverine sought only to move their billboards slightly further back on the same piece property. Thus, Plaintiff was seeking to create a new non-conforming use, while Lapeer and Wolverine were looking only to continue their previous non-conforming use. Additionally, Lapeer and Wolverine had no objections raised against their variance requests, and in fact had letters of support. Plaintiff had no such support and, in fact, had a letter of opposition from the owner of a neighboring parcel of property.

There is also a lack of regulatory congruence between the requests of Lapeer and Wolverine and that of Plaintiff. Plaintiff sought a variance from the following: the limit on size, the limit on distance between signs, the limit on distance from a residential district, the setback requirement from the center line of regional highway and the sign, and he would have created a new non-conforming use. In contrast, the variance granted Lapeer and Wolverine did not create a new non-conforming use and did not seek a variance on the setback requirement. From the evidence, it is clear that Lapeer and Wolverine are not substantially similar to Plaintiff.

Finally, even if substantial similarity were found, there is a rational basis for a differing treatment. A class of one Plaintiff can show a lack of rational basis by either: "negat[ing] every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Klimik v. Kent County Sheriff's Dept.*, 91 Fed. Appx. 396, 400 (6th Cir.2004). Plaintiff has not addressed the differences in the facts addressed above. According to the record contained in the hearing minutes, the variances were denied based on those differences. There also been no attempt to demonstrate that Defendants were motivated by ill-will or animus. Therefore, summary judgment is granted to Defendants on the equal protection claim.

23

5. **UNCONSTITUTIONAL TAX**

Plaintiff claims that the $800 variance application fee is an unconstitutional tax. To avoid being classified as a tax, a fee must meet the following three criteria: (1) fee must be regulatory and not revenue-raising; (2) "fees must be proportionate to the necessary costs of the service;" and (3) a fee must be voluntary, that is the users must be "able to refuse or limit their use of the commodity or service" that the fee is serving. *Bolt v. City of Lansing*, 459 Mich. 152, 161-62 (1998). First, the fee here is absolutely voluntary, since Plaintiff can decide to refuse or limit their use of the service as they see fit. Second, according to the affidavit submitted by the Clerk for the Township of Metamora, the costs associated with processing Plaintiff's application for a variance actually exceeded the fee, since the costs of the required public hearing, meeting of the Zoning Board of Appeals, and the payments for the participants added up to $810.80, rendering it a proportional regulatory fee rather than revenue raising tax. [41-9].

Plaintiff cites no legal authority, but merely argues that the fee is a tax since, *inter alia*, it is higher than the application fees of other townships. The fee does not become a tax just because the Plaintiff does not agree with the amount, and Plaintiff cites no authority to support his contention, merely stating his disagreement with the amount and comparing it to past fees and different

24

township's fees to claim it is a tax. This does not transform a fee into a tax, and Defendant is granted summary judgment as to this claim.

## CONCLUSION

For the reasons stated above, summary judgment is granted for the Plaintiff on the prior restraint claim of the complaint and Section 1801(c) of the Township Ordinance may not be enforced. Summary judgment is granted for the Defendant on the remaining claims in the complaint, including the First Amendment claim, the unconstitutional tax claim, the unlawful takings claim and the equal protection claim. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment on the first amendment claim [17] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment on the first amendment claim [22] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Second Motion for Summary Judgment [41] is **GRANTED** as to the following claims: unlawful takings, equal protection and unconstitutional tax and **DENIED** as to the prior restraint claim.

25

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Summary Judgment [41] is **GRANTED** as to the prior restraint claim and **DENIED** as to the unlawful takings claim.

**IT IS FURTHER ORDERED** that Section 1801(c) of the Township Ordinance is found unconstitutional as violative of the First Amendment to the Constitution of the United States.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Witnesses [33] is **DENIED as moot.**

**SO ORDERED**.

<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow
Dated: May 12, 2016                    Senior United States District Judge